The PEOPLE OF the STATE OF CALIFORNIA and the Public Utilities Commission of the State of California, Petitioners,

v.

CIVIL AERONAUTICS BOARD, Respondent,

Air Nevada et al., Intervenors.

NATIONAL ASSOCIATION OF REGULATORY UTILITY COMMISSIONERS, Petitioner,

v.

CIVIL AERONAUTICS BOARD, Respondent,

Air Nevada et al., Intervenors.

Nos. 75–2070, 75–2133.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 15, 1976.

Decided March 14, 1977.

Certiorari Denied Oct. 3, 1977.

See 98 S.Ct. 117.

Andrew J. Skaff, Jr., San Francisco, Cal., with whom Richard D. Gravelle and J. Calvin Simpson, San Francisco, Cal., were on the brief, for petitioners in No. 75–2070.

Sumner J. Katz, Washington, D. C., with whom William Paul Rodgers, Jr., Washington, D.C., was on the brief for petitioners in No. 75–2133.

Alan R. Demby, Atty., C.A.B., Washington, D. C., with whom James C. Schultz, Gen. Counsel, Jerome Nelson, Deputy Gen. Counsel, and Glen P. Bendixsen, Associate Gen. Counsel, C.A.B., Washington, D. C., were on the brief, for respondent.

J. William Doolittle, Washington, D. C., for intervenor, Air California.

Cecil A. Beasley, Jr., and John C. Smuck, Washington, D. C., were on the brief, for intervenor Pacific Southwest Airlines. Richard D. Mathias, Washington, D. C., entered an appearance for intervenor Pacific Southwest Airlines.

Rex H. White, Jr., Asst. Atty. Gen., State of Tex., was on the brief for intervenor, Texas Aeronautics Commission. John David Hughes, Asst. Atty. Gen., State of

Tex., Austin, Tex., entered an appearance for intervenor, Texas Aeronautics Commission.

Robert B. Nicholson and Edward E. Lawson, Attys., Dept. of Justice, Washington, D. C., entered appearances for respondent.

James L. Devall, Washington, D. C., entered an appearance for intervenor, Air Nevada.

Before ROBB and WILKEY, Circuit Judges, and GESELL,* United States District Judge, United States District Court for the District of Columbia.

Opinion for the Court filed by District Judge GESELL.

Dissenting Opinion filed by Circuit Judge WILKEY.

GESELL, District Judge:

The State of California, its Public Utilities Commission, and the National Association of Regulatory Utility Commissioners petition here for review of Civil Aeronautics Board orders [1] which granted two intrastate California airlines conditional exemption from regulation as interstate carriers. The airlines in 1975 sought and obtained exemption from Board regulation [2] despite holding themselves out as providing service to Lake Tahoe, Nevada, a resort located near the California border. Subsequently, in 1976, the Board temporarily renewed these exemptions [3] pending a complete investigation into the air service patterns of the Lake Tahoe area.[4] Petitioners, who participated in the proceedings below, are disturbed by indications in the 1975 rulings that the Board is extending its jurisdiction in a way that impinges upon state regulation of intrastate airlines. Neither airline which sought and obtained the exemptions,

however, has challenged the Board orders. They do appear here as intervenors, one supporting petitioners, the other supporting the Board.

The California airlines utilize Tahoe Valley Airport, physically located in California, for their Nevada service. When it granted the 1975 exemptions the Board announced that "in our view air service at Lake Tahoe is interstate in nature by definition." It is to this observation that petitioners object, complaining it constitutes a determination which threatens to limit their jurisdiction. The initial question is whether, in light of the Board's 1976 action opening the issues for fuller inquiry, this 1975 dicta creates a case or controversy which this Court can or should attempt to resolve. We hold that it does not and affirm the Board's orders.

Without the benefit of a full hearing or investigation the Board in 1975 unnecessarily chose to announce its attitude about the nature of air service in the Lake Tahoe area. However, a year later the Board apparently had further thoughts since it ordered a full-scale investigation to determine on an evidentiary record which aspects of Lake Tahoe air service will be deemed interstate in nature. The premature announcement of the Board's "view" was unfortunate because it suggests a predisposition that might lead observers to question the bona fides of the now pending inquiry into Lake Tahoe air service. Thus, it is understandable that petitioners who have a real stake in the outcome of the investigation prefer to have the issue resolved immediately. However, this is not possible. We cannot say with assurance what aspects of Tahoe air service, if any, will eventually be judged by the Board to be interstate in nature. Certainly we cannot know, let alone evaluate, the factual

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. Order 75–6–135 (issued June 27, 1975); Order on Reconsideration, Order 75–9–78 (issued September 22, 1975).

2. Pursuant to 49 U.S.C. § 1386(b)(1).

3. Order 76–3–114 (issued March 16, 1976).

4. This investigation will provide data relevant to both limitations which were temporarily imposed. These were prohibitions on (1) engaging in inter-airline ticketing or baggage transfer, and (2) extending air service beyond those points named in the exemption by connecting Tahoe flights with their intrastate systems, i.e., "tacking".

bases for such determinations, and the expertise of the Board will undoubtedly throw considerable light on the underlying legal principles. So while there is some temptation to confront the issue, this action would be unwise as well as premature. A full record is now being developed. There later will be ample opportunity to define the legal principles differentiating interstate from intrastate air service in the Tahoe region based on solid factual premises.

The parties here are also parties to the pending Board investigative proceedings. They will have an opportunity for full participation in the developing decision. The fact that the Board spoke too soon and too loosely does not mandate judicial review at this time. There is an obvious need for a fuller record to settle the underlying jurisdictional dispute between these parties. That is, in fact, precisely what is being constructed and we are unwilling to interfere.

The subject appeal is not timely. The issue is presently too theoretical and abstract. The decisions of the Board granting exemptions are affirmed, but in so doing the Court is neither approving nor disapproving the "view" expressed in the 1975 Board orders.

Affirmed.

WILKEY, Circuit Judge, dissenting:

I must disagree with the majority's view that this appeal does not present a case or controversy which calls for judicial resolution. On the contrary, a careful examination of the facts of this appeal shows that the petitioners are presently suffering harm due to erroneous, unsupported action by the Civil Aeronautics Board. As the record demonstrates:

1. the petitioners are presently hurt by various conditions attached to the Board's orders;

2. these conditions are expressly based upon the Board's finding that the intra-California traffic is interstate commerce; and

3. there is *no evidence* in the record to support the Board's finding, and, hence, no rational basis for the imposition of the conditions that are presently hurting petitioners. Accordingly, the orders of the Board should be reversed and remanded for further proceedings in light of its error.

The fact that the Board is now conducting proceedings to gather facts to justify its *earlier* orders should not mean that in the interim the earlier orders should stand. When the Board has available a factual basis for the rational support of its orders then it can act, but not before. I am amazed at the statement of my colleagues: "A full record is now being developed. There later will be ample opportunity to define the legal principles differentiating interstate from intrastate air service in the Tahoe Region based on solid factual premises." [1] Anyone familiar with principles of judicial review of administrative agency action would have thought that the present total absence of a factual basis for the Commission's action was a vice calling for the action to be set aside, not a virtue inducing the court to sustain agency action while the supporting facts are gathered over a period of years.

It is necessary at the outset to provide a short chronology of the key events and details of this appeal. In February 1975 the Public Utilities Commission of the State of California (hereinafter "California Commission") granted authority to Pacific Southwest Airlines (PSA) and Air California (Air Cal) to supply service between Tahoe Valley Airport, California and other points in California. In particular, PSA was authorized to serve Tahoe from Los Angeles and Burbank and Air Cal was authorized to serve Tahoe from San Jose and Oakland. In addition, the California Commission allowed the airlines to connect or "tack" other intrastate flights to the Tahoe flights. (See chart attached) Under this permission PSA was able to serve Tahoe and San Diego via Los Angeles or Burbank and Air Cal was

---

1. Maj.Op. at pp. —— – —— of 185 U.S.App.D.C., p. 3, of 567 F.2d.

able to serve Tahoe and San Francisco, Santa Ana, Ontario, Palm Springs, and San Diego via San Jose or Oakland.[2]

In June 1975 the Board issued Order 75–6–135, in response to the applications of PSA and Air Cal for exemption from regulation as interstate carriers. The Board, as had the California Commission, granted PSA authority to serve Tahoe from Los Angeles and Burbank and Air Cal authority to serve Tahoe from Oakland and San Jose.[3] However, unlike the California Commission, the Board prohibited both PSA and Air Cal from "tacking" any of its intrastate flights onto the Tahoe flights. *The Board stated that this restriction and others also imposed[4] were necessary because "air service at Lake Tahoe is interstate in nature by definition,"* the Board having found that "more than a *de minimis* number of passengers moving by air between Lake Tahoe and other California points originate or terminate their journeys in Nevada."[5]

The Board's restriction, and the factual finding of interstate service on which it rests, are the guts of the issue here; the restrictions hurt petitioners, and the fact finding rests on nothing but thin air. The Board has not cited—in order, in opinion, in brief, or in argument—one fact, one passenger in interstate travel, to support its finding of interstate air service at Lake Tahoe. It is now engaged in that fact finding effort, and may well succeed in supporting its previous pure imagination. Until it does so, the Board's presently effective orders, damaging to petitioners, rest on nothing but the Board's imagination as to what the facts are.

The California Commission filed a petition for reconsideration of Board Order 75–6–135. Among other requests, it sought reconsideration of the restrictions by which Air Cal and PSA would be precluded from providing services authorized by the California Commission. (See chart attached). The National Association of Regulatory Utility Commissioners (NARUC) filed a petition in support of the California Commission; other parties also sought reconsideration.

In its order on reconsideration, 75–9–78, the Board reaffirmed its conclusion that the air traffic to Lake Tahoe from other California points was interstate in nature and continued the relevant conditions, *e. g.,* the prohibition on "tacking." The People of California and its Commission as well as NARUC appealed to this court from both orders. While these appeals were before this court, the Board in its Order 76–3–114 of March 1976 renewed the exemptions with the same relevant restrictions and set up an investigatory hearing to develop a factual record, *e. g.,* as to the "intrastate/interstate mix of [the] passengers" at the Lake Tahoe airport.[6] In this order the Board reiterated its conclusion that air service at Tahoe is interstate in character. The petitioners amended their appeals to include this third order.[7]

Where in this scenario is the present harm that creates a case or controversy? As noted, *the certificates of the California Commission allowed both airlines to "tack" intrastate routes onto the intraCalifornia Tahoe flights, but the Board exemptions specifically prohibited such "tacking."* The

2. The applications to the California Commission were prompted by the then recent termination of California service by Holiday Airline Service, which went bankrupt. The Commission granted short-term extensions and has replaced them with temporary certificates that are still effective.

3. The airlines were also given permission to *advertise* the availability of Nevada destinations for their Tahoe flights. While the Board considered this activity to be interstate commerce, it was concerned that a prohibition, *while within its power, would constrict the full*

development of the Lake Tahoe market and not be in the public interest.

4. The applicants were also prohibited from interline ticketing or baggage handling on the Tahoe flights and from publishing connecting schedules for the Tahoe flights.

5. Order 75–6–135; Joint Appendix (J.A.) at 8. (emphasis added).

6. Order 76–3–114; Attachment to CAB Br. at 4.

7. *See* Joint Reply Br. of Pet. at 8.

first demonstrable harm, thus, is that the statutory power of the California Commission has, in effect, been cut back by the Board. Moreover, this clash in authority, adverse to the California Commission, continues to this day. The California Commission has not acquiesced in the Board's orders. It has objected to every one of them and, indeed, refused to allow PSA to amend its state certificate to comply with the Board's restrictions.[8] A state agency has standing to contest the orders of federal agencies that impose limits on its statutory responsibilities. See *Washington Utilities & Transportation Comm'n v. FCC.*[9] NARUC likewise has standing to represent the interest of its aggrieved member, the California Commission. See *Air Line Pilots Ass'n, Int'l v. CAB.*[10]

The majority errs in its characterization of the harm to the petitioners as untimely and abstract. At this very moment, for example, PSA, pursuant to the Board's orders, is not "tacking" any San Diego service to its Tahoe flights, even though the California Commission had specifically allowed it to do so. If the Board has illegally imposed this restriction on PSA, then the scope of the state Commission's authority has been unjustifiably abridged. Thus, it has standing here to challenge the basis of the Board's orders.

What, then, is the basis for the Board's restrictions, *e. g.,* the "tacking" prohibitions, that, as I have shown, cause current harm to the petitioners? Put another way, what interest does the Board have in putting limits, for example, on the intrastate "tacking" to the Tahoe flights? The majority, however, regards the Board's "view" on the interstate characterization of traffic at Lake Tahoe Airport as only "dicta." How

then can the majority explain the basis for the Board's actions?

As noted earlier, the Board explained in its first order that the "restrictions are necessary because, in our view, air service at Lake Tahoe is interstate in nature by definition. That is to say, PSA and Air California are *now* engaged in air transportation without Board authority."[11] With its view that flights from California points to the California airport at Tahoe were in interstate commerce, the Board was concerned that it might grant too "broad" an exemption to these airlines, which, after all, did not possess interstate certificates from the Board. Hence, it decided to confine what it regarded as "interstate" traffic to Tahoe to the minimum necessary for a "viable" Tahoe service. As a result, it prohibited the intrastate "tacking" that it acknowledged the California Commission had allowed. Similarly, it prohibited interline ticketing or baggage handling and the publication of connecting schedules. All of the Board's actions thus rest upon its conclusion that the air service at Tahoe is interstate in nature, a conclusion the Board is busily trying to buttress by finding the facts it should have had in the first place.

As a foundation for its view of interstate traffic, the Board relied upon its (purely imaginary) fact finding that "more than a *de minimis* number of passengers moving by air between Lake Tahoe and other California points originate or terminate their journeys in Nevada."[12] The conclusion that the Tahoe traffic is interstate rests, in turn, upon the Board's reading of the scope of "interstate air commerce" subject to its jurisdiction under the Federal Aviation

---

8. PSA discontinued its "tacked" service between Tahoe and San Diego and sought permission from the California Commission to withdraw its published through fare between Tahoe and San Diego. The California Commission denied permission. As this indicates, PSA decided to operate pursuant to the conditions of the Board's exemption. Hence, it advertises Nevada destinations, see note 3, *supra,* but does not "tack." Air Cal, on the other hand, has elected to forgo the Board's exemption.

Thus, it does not advertise Nevada destinations but does "tack" intrastate flights, pursuant to the state certificate.

9. 513 F.2d 1142 (9th Cir. 1975).

10. 169 U.S.App.D.C. 293, 515 F.2d 1010 (1975).

11. J.A. 8. (emphasis original).

12. *Ibid.*

**6**

Act.[13] Its position is that air transportation between two points wholly within the same state may constitute "interstate air commerce" under the Federal Aviation Act if in those operations the carrier transports more than a *de minimis* volume of traffic moving as part of a continuous journey to another state. Petitioners vigorously argue, however, that air traffic by a carrier wholly within a state may become interstate only if the carrier enters into contractual interline or joint fare agreements for the leg of the journey that carries the traffic into another state. In other words, petitioners contend, a carrier who provides air transportation to points wholly within the same state is not in interstate air commerce solely because of the independent movement of more than a *de minimis* number of passengers across state lines, separate and apart from the operations of the carrier. At the Lake Tahoe airport, petitioners state, and the Board does not dispute, that the passengers travel to the Nevada side on an independent basis without benefit of any formal contractual interline or joint fare agreement by the airlines.

On the basis of these facts the petitioners rest their legal position on *United States v. Yellow Cab Co.*,[14] in which the Court dealt with two types of taxicab transportation, one provided by the railroads and paid for along with the rail tickets, the other paid directly by the passenger to the driver. The Court held that the railroad-contracted taxi service only was in interstate commerce and that the relationship of the second "to interstate transit is only casual and incidental."[15] To what extent *Yellow Cab* has been modified, or to what extent it is applicable to the facts of the instant case, we need not decide nor do we imply any opinion on these legal issues on the merits. Mere recitation of part of the legal issues posed does demonstrate, however, that the Board does require a clear and ample factual basis on which to construct any sustainable legal rationale.[16]

Nor is it necessary for us to decide the difficult question of the proper construction of "interstate air transportation" under the Aviation Act, with all its far-reaching implications[17] because the Board has erroneously applied its interpretation, even assuming it is correct. In brief, there is no evidentiary support in the record for the key Board finding that more than a *de minimis* number of passengers moving by air between Lake Tahoe and other California points originate or terminate their journeys in Nevada. The Board provides no statistical or other factual evidence to support its finding. Indeed, its decision to conduct its current evidentiary hearing is a virtual admission that it had no such evidence before it when it chose to characterize the Tahoe

13. 49 U.S.C. § 1301(21).

14. 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947).

15. 332 U.S. at 231, 67 S.Ct. at 1567.

16. This may be particularly true since the statutory mandate of the CAB relates, not to "interstate commerce," but to the narrower "interstate *air* commerce," "interstate *air* transportation," etc. 49 U.S.C. § 1301(10), (20), (21), (22), and (23); § 1371 *et seq.* A contrary implication might be argued, however, from the somewhat baffling phrase, "whether such commerce moves wholly by aircraft or partly by aircraft and partly by other forms of transportation," 49 U.S.C. § 1301(21).

17. The Texas Aeronautics Commission has also intervened in this case on behalf of the petitioner's view of "interstate air transportation." The petitioners warn that:

The Board could conclude that on any intrastate flight, in any state, "more than a *de minimis*" number of passengers have out-of-state destinations, and declare the service to be interstate in nature and therefore subject to its jurisdiction. As a result, presently active state regulatory commissions could be faced with a virtual cessation of control over these innately local matters. Joint Br. at 23. Congress, of course, has the constitutional authority to extend Board regulation to all air transportation affecting interstate commerce, which would virtually pre-empt state regulation of commercial flight in its entirety. Whether Congress decides to do so is a matter left to its judgment. However, the question under the Aviation Act is the extent to which Congress has empowered the Board to regulate interstate commerce *short* of its full constitutional definition.

traffic. As noted earlier, one of the purposes of the hearing is to determine "the intrastate/interstate mix" of the Tahoe passengers.

In its orders, the Board did advance two separate grounds for its finding, but these grounds do not provide substantial support. In its first order, the Board stated that it had already made such a finding, *i. e.*, about *de minimis* traffic at Tahoe, "both explicitly and implicitly," in previous cases. Its reliance upon the cited cases,[18] however, is misplaced, if not misleading. For example, in *Zantop Air Transport*,[19] the question arose whether an intrastate charter flight into the California airport at Tahoe was really interstate since some of the passengers "may well be destined" for the Nevada side. The Board said: "The resolution of this question, however, involves complex factual and legal questions and *can only be settled after a full evidentiary record is developed* through the Board's customary hearing procedure." [20] *No evidentiary record was later developed. Zantop,* along with the other cases cited by the Board, does *not* stand for the proposition that the Board has already made a factual finding about Tahoe traffic. After all, as the Board itself stated, the reason why the Board undertook the current hearing was to inquire into the factual basis for its (previously made) interstate characterization.

In the order on reconsideration, the Board argues inferentially that:

> [I]t must be assumed that both PSA and Holiday (*sic*) are fully aware that a sizeable portion of their Lake Tahoe passengers are interstate passengers for there is

no other reason why they would have filed applications for exemptions to hold out the availability of Nevada destinations in the first place.[21]

As noted earlier, the airlines applied for and received permission to advertise the availability of Nevada destinations on the Tahoe flights. This does not automatically prove, however, that at the time of the application or at present that more than a *de minimis* number of Tahoe passengers end or originate in Nevada. At the time of application Air Cal and PSA may have sought permission because they desired *in the future* to attract passengers bound for Nevada. At the time of application their Tahoe traffic may or may not have been composed of a significant number of passengers bound for Nevada. The Board has presented no direct evidence to substantiate its characterization and the logic of the application for future permission, as I have suggested, does not compel us to accept the Board's characterization.

Subsequent to the grant of permission by the Board, PSA, which accepted the exemption, presumably has been advertising the availability of Nevada destinations for its Tahoe flights. Thus, the Board could argue [22] that there is fair assurance now of more than *de minimis* movement to or from Nevada. It is certainly true that under the Administrative Procedure Act,[23] a factual finding may properly be based on inferences drawn from other evidence. But that circumstantial·evidence must have a substantial basis in fact. Here, all the Board can point to in the record, is the simple fact

---

18. Order 75–6–135; J.A. at 8, n.10.

19. 39 C.A.B. 800 (1963).

20. *Ibid.* (emphasis added).

21. Order 75–9–78; J.A. at 16.

22. I examine this argument because of its close relation to the prior contention of the Board, text at *supra* n. 21. In its Brief in this court, the Board has not addressed or defended any of the alleged grounds in the Board opinions of substantial support for the factual finding of interstate transportation in the Tahoe flights. Nor has the Board filed any supplemental brief,

even though the reply brief of Air Cal, an intervenor, claims that the lack of defense amounts to a "concession" that there was no factual support for the finding. While my review of the alleged grounds of support in the Board opinions shows that I do not rely upon any "concession," it is painfully obvious that the Board brief totally avoids any defense, or even mention, of its key factual finding.

23. 5 U.S.C. § 706(2)(E). See *Kephart v. Wilson,* 219 F.Supp. 801, 811 (W.D.Tex.1963), *aff'd, Chandler v. David,* 350 F.2d 669 (5th Cir. 1965).

of the permission to advertise. If, for instance, the Board told us that a third of PSA's advertising budget for the Tahoe flights went to promote Nevada destinations, there would, at least, be factual grounds for a rational inference that a substantial number of passengers, e. g., 15%, continued on to Nevada from Tahoe airport. But it is not sufficient support for an inference of substantial movement between Tahoe Airport and Nevada to assert, without more, that the applicants were extended permission to advertise.

As a result of the lack of any tangible evidence behind its interstate finding, the Board is left with no rational basis for the restrictive conditions it imposed on the exemptions for PSA and Air Cal. On all accepted standards of judicial review, the proper course for this court is to remand the case to the Board with instructions to lift the restrictive conditions, e. g., the prohibition on intrastate "tacking." It may well be that the current investigation will provide solid evidence of a more than de minimis movement, thus allowing for a proper application of the Board's contested interpretation. But as for the interim, an intervenor has suggested, without Board contradiction, that it may take the Board another two years or more to complete the investigation and resolve all the questions.[24] Judicial review, if sought, will also take additional time.

Meanwhile petitioners continue to suffer real harm from the erroneous imposition of the restrictive conditions. The Public Utilities Commission of the State of California has not brought this action just because it feels its regulatory dignity affronted by the whimsical unsupported action of the Board, nor is the joinder of "The People of the State of California" as a petitioner an action without substance. In a very practical sense, it is the *people* of California, and other *consumers* of air transport, who are injured by the illegal action of the Board here. Until the federal agency finds both factual and legal reasons otherwise, the citizens of California (and all travelers within that State) have a perfect legal right to buy tickets on intra-California flights advertised and issued in any manner the California regulatory Commission approves. And at the *prices* the California regulatory body approves. We are familiar with the fact that for several years *intra* state air carriers in both California and Texas, regulated only by a state agency, have been able to offer air transport at far lower fares than the Board regulated interstate carriers.

What my colleagues approve of here is a direct blow by the Board, given without the benefit of any fact-finding or formal proceeding whatever (in which the Board is *now* retroactively engaged), at the consumers of air transport in California, who have the legal right to enjoy the convenience and cost of intra-California air transport regulated only by the California Commission, until such time as the Board can establish that such transport is *inter* state and thus subject to Board regulation.

Considerations of administrative fairness and regularity counsel us to provide relief in this case. An agency should not be able to make adverse decisions based on a hypothetical finding of fact, wait until an aggrieved party seeks to challenge the lack of substantial evidence by judicial review, *then* begin to establish facts in support of its hypothetical finding, *and* in the meanwhile maintain, without judicial examination, the initial decisions based on the hypothetical finding. I dissent.

[See following illustration]

---

**24.** Air Cal.Reply Br. at 6.

|  | PSA | Air Cal |
|---|---|---|
| PUC 19 Feb. 1975 | 1. authorization to serve Tahoe from Los Angeles and Burbank<br><br>2. authorization to "tack" Tahoe flights with San Diego | 1. authorization to serve Tahoe from San Jose and Oakland<br><br>2. authorization to "tack" Tahoe flights with San Francisco, Santa Ana, Ontario, Palm Springs and San Diego |
| CAB 27 June 1975 | 1. authorization to serve Tahoe from Los Angeles and Burbank<br><br>2. no authorization to "tack" Tahoe flights beyond Los Angeles and Burbank | 1. authorization to serve Tahoe from San Jose and Oakland<br><br>2. no authorization to "tack" Tahoe flights beyond San Jose and Oakland |